## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

CHEVRON CORPORATION,                                      Case No. 1:10-mc-53
    Petitioner                                             Beckwith, J.
                                              Litkovitz, M.J.

      v.

LAWRENCE BARNTHOUSE,                                      **ORDER**
    Respondent

      This case involves the issue of whether Chevron Corporation ("Chevron") may conduct discovery on Lawrence W. Barnthouse, a Hamilton, Ohio resident, in connection with a lawsuit pending in Ecuador and an arbitration proceeding pending in the Permanent Court of Arbitration in the Hague.  This matter is before the Court on the ex parte application of Chevron Corporation for an order pursuant to 28 U.S.C. § 1782 to conduct discovery on Lawrence W. Barnthouse for use in foreign proceedings (Doc. 1) and memoranda filed in support thereof (Docs. 2-5, 7), respondent Lawrence W. Barnthouse's objections to subpoena duces tecum and ad testificandum (Doc. 18), respondent and the Ecuadorian Plaintiffs' joint brief in opposition to Chevron's ex parte application for discovery (Doc. 20), Chevron's reply memorandum and supplemental request for judicial notice (Docs. 25, 26), respondent and the Ecuadorian Plaintiffs' request for judicial notice of U.S. filings and orders (Doc. 28), and respondent and the Ecuadorian Plaintiffs' sur-reply in response to Chevron's reply memorandum. (Doc. 34)  Upon consideration of the parties' briefs and arguments presented at a hearing before the undersigned on November 23, 2010, the Court grants Chevron's application for discovery.

## BACKGROUND

      Chevron seeks discovery from Lawrence W. Barnthouse for use in a lawsuit pending

against Chevron in Lago Agrio, Ecuador (the "Lago Agrio Litigation") and in an arbitration

proceeding commenced by Chevron against the Republic of Ecuador under the Bilateral

Investment Treaty between the United States and Ecuador pending in the Permanent Court of

Arbitration in the Hague (the "Treaty Arbitration").  The background of Lago Agrio Litigation

was recently summarized by the Fifth Circuit Court of Appeals in *Ecuadorian Plaintiffs v.

Chevron Corp.*, 619 F.3d 373 (5th Cir. 2010):

> In 2003, the plaintiffs sued Chevron in Ecuador, seeking to hold Chevron
> liable as the successor to Texaco Petroleum Company.  The plaintiffs allege that
> Texaco polluted the Ecuadorian Amazon Rainforest over the course of several
> decades while engaging in oil extraction in the region.  This appeal arises out of
> the plaintiffs' Ecuadorian lawsuit against Chevron.  Specifically, it concerns
> Richard Stalin Cabrera Vega ("Cabrera"), an individual appointed by the
> Ecuadorian court to serve as a neutral expert in the Ecuadorian proceedings.  The
> Ecuadorian court ordered Cabrera to draft a report describing the effect of
> Texaco's operations on Ecuador's environment, accompanied by "all the
> documents that serve as support or a source of information" for the report.  The
> court also ordered that these supporting documents "be provided to the parties"
> upon the report's release.  In 2008, Cabrera released a report recommending that
> Chevron be held liable for $27.3 billion in damages, but the Ecuadorian court has
> yet to render a judgment against Chevron.
>
> Despite Cabrera's professed impartiality, Chevron claims that Cabrera
> actually worked closely with the plaintiffs to produce his report, much of which
> Chevron alleges was secretly ghostwritten by the plaintiffs' U.S. consultants.
> Consequently, Chevron has initiated a series of discovery proceedings in the
> United States under 28 U.S.C. § 1782(a), seeking evidence of collusion between
> Cabrera and the plaintiffs' U.S. consultants.

*Id.* at 375 (footnote omitted).

In September 2009, Chevron instituted an arbitration proceeding against the Republic of

Ecuador under the Bilateral Investment Treaty between the United States and Ecuador.  In the

international arbitration proceeding, brought pursuant to the United Nations Commission on

International Trade Law ("UNCITRAL"), Chevron alleges that the Republic of Ecuador abused

the criminal justice system in Ecuador by colluding with the Ecuadorian Plaintiffs in the Lago

Agrio Litigation and utilizing other coercive tactics in an effort to shift Ecuadorian remediation

obligations and liabilities to Chevron in breach of Ecuador's obligations under the Treaty. (Doc.

1, Exh. F).  Specifically, Chevron claims that "Ecuador has engaged in a pattern of improper and

fundamentally unfair conduct" whereby Ecuador has allegedly (i) repudiated various settlement

and release agreements; (ii) improperly exercised jurisdiction over Chevron; (iii) improperly

assisted and colluded with the Lago Agrio Plaintiffs as a means of imposing cleanup obligations

that belong to Ecuador on Chevron; and (iv) abused the criminal justice system to advance its

"improper goals." (Doc. 1, Exh. F at ¶ 68).

After the issue of the authorship of the Cabrera Report was raised in the Lago Agrio

Litigation, the Lago Agrio court ordered the parties to submit supplemental reports on their

respective positions on damages by September 16, 2010. (Doc. 20, Exh. K).  In response, the

Plaintiffs submitted six expert reports, including one from Lawrence W. Barnthouse, a consultant

from Hamilton, Ohio, who offered an opinion on the value of losses to the natural resources in

the Ecuadorian oil concession area. (Doc. 7, Exh. W).  Chevron in turn initiated § 1782(a)

proceedings directed at each of the September 16, 2010 experts for purposes of obtaining

discovery for use in both the Lago Agrio Litigation and the Treaty Arbitration.[1]  The  instant case

is one of those six § 1782(a) proceedings.  Chevron seeks deposition testimony and discovery of

documents related to Barnthouse's expert opinion that Chevron should be responsible for $1.42

million to $874.5 million in damages for such losses. (Doc. 7, Exh. W).  Chevron asserts that the

---

[1] Prior to the six § 1782(a) proceedings brought in response to the September 16, 2010 expert reports, Chevron brought nine § 1782(a) petitions in the district courts of the United States seeking discovery from persons who allegedly contributed to the Cabrera Report in some way.

discovery sought from Mr. Barnthouse is directly relevant to its claims not only in the Lago Agrio Litigation, but in the Treaty Arbitration as well.

## LEGAL STANDARD

Section 1782 provides in relevant part, "The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. . . ."  Pursuant to 28 U.S.C. § 1782(a), the district court is authorized to assist foreign and international tribunals and litigants before such tribunals by issuing discovery orders where: (1) the target of the discovery "resides or is found" within the district; (2) the requesting party is a foreign or international tribunal or an "interested person" in the foreign proceeding; and (3) the discovery is requested "for use in a proceeding in a foreign or international tribunal."  In other words, the statute empowers the federal district courts to assist interested parties in gathering  evidence for use in a foreign or international tribunal.  *See Intel Corp. v. Advanced Micro Devices Inc.*, 542 U.S. 241, 264 (2004).[2]

The issuance of discovery orders is within the discretion of the district court. *Id.* at 264. In exercising that discretion, the district court should consider the following factors: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding such that the discovery sought is within the foreign tribunal's jurisdictional reach and thus accessible absent Section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to

---

[2] "Congress introduced the word 'tribunal' to ensure that 'assistance is not confined to proceedings before conventional courts,' but extends also to 'administrative and quasi-judicial proceedings.'" *Intel Corp.,* 542 U.S. at 249.

U.S. federal-court jurisdictional assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the subpoena contains unduly intrusive or burdensome requests. *Id.* at 264-65. In addition, "district courts must exercise their discretion under Section 1782 in light of the twin aims of the statute: 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'" *In re Application of Chevron Corp.*, 709 F. Supp.2d 283, 290 (S.D.N.Y. 2010) (quoting *Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*, 376 F.3d 79, 84 (2d Cir. 2004)).

### THE STATUTORY FACTORS UNDER 28 U.S.C. § 1782.

### 1. Whether the Arbitration Tribunal is a "foreign tribunal" under 28 U.S.C. § 1782.

The first two statutory requirements for the issuance of an order to conduct discovery under 28 U.S.C. § 1782 are satisfied in this matter. First, Mr. Barnthouse, the target of the discovery, resides or is found within the Southern District of Ohio. Second, Chevron–a party to both the Lago Agrio Litigation and the Treaty Arbitration–is an "interested person" in both foreign proceedings.

The Plaintiffs[3] do not dispute that factors one and two of the statute are met in this case. Nor do Plaintiffs disagree that the Lago Agrio Litigation constitutes "a proceeding in a foreign or international tribunal," the third statutory factor. Nevertheless, the Plaintiffs assert that the Treaty Arbitration is a private arbitration and does not constitute "a proceeding in a foreign or

---

[3]For ease of reference, the Court shall refer to Respondent Barnthouse and the Ecuadorian Plaintiffs collectively as "Plaintiffs."

international tribunal" within the meaning of § 1782.  The Plaintiffs' argument is not well-taken.

First, the cases Plaintiffs cite for the proposition that a private arbitration panel does not qualify as a "foreign or international tribunal" under § 1782(a) do not support their argument. The decisions in *National Broadcasting Co., Inc. v. Bear Stearns & Co., Inc.*, 165 F.3d 184 (2d Cir. 1999) and *Republic of Kazakhstan v. Beidermann*, 168 F.3d 880 (5th Cir. 1999) pre-date the Supreme Court's decision in *Intel*, which specifically recognized that arbitration tribunals fall under the purview of the statute. *Intel*, 542 U.S. at 258 ("[t]he term 'tribunal' . . . includes investigating magistrates, administrative and arbitral tribunals, and quasi-judicial agencies, as well as conventional civil, commercial, criminal, and administrative courts").  More importantly, the arbitration tribunal at issue here is one established by an international treaty between two sovereign nations, the United States and Ecuador, and not one created by private parties.  *See In re Application of Chevron Corp.*, 709 F. Supp.2d 283, 291 (S.D.N.Y. 2010) (distinguishing *National Broadcasting Co.*, 168 F.3d at 191).

Second, the other district courts that have addressed the precise issue before this Court in other § 1782 proceedings have determined that the arbitration tribunal established by the Bilateral Investment Treaty constitutes a "foreign or international tribunal" under § 1782(a).  *See In re Veiga*, ___ F. Supp.2d ___, 2010 WL 4225564, at *8 (D.D.C. Oct. 20, 2010); *In re Application of Chevron Corp.*, 709 F. Supp.2d 283 (S.D.N.Y. 2010).  *See also In re Chevron Corp.,* Case No. No. 10 MC 00002, 2010 WL 4449197, at *15 (S.D.N.Y. Nov. 5, 2010); *Chevron Corp. v. Camp,* Nos. 1:mc27, 1:10mc28, 2010 WL 3418394, at *4 (W.D.N.C. Aug. 30, 2010); *In re: Application of Chevron*, No. 3:10-cv-686 (M.D. Tenn. Aug. 17, 2010) (see Doc. 4, Exh. H at 3-4) (§ 1782 applies to an arbitration conducted under the auspices of UNCITRAL).

Third, the Ecuadorian government, a signatory to the Bilateral Investment Treaty, views the international arbitration at issue in this case as a proceeding in a "foreign or international tribunal" under § 1782(a). Like Chevron in this case, Ecuador has sought discovery under the statute for purposes of gathering information for use in the Bilateral Investment Treaty arbitration. *See In re: Republic of Ecuador*, No. 1:10-mc-00040, 2010 WL 4027740, at * 1-2 (E.D. Cal. Oct. 14, 2010); *In re: Republic of Ecuador*, No. C-10-80225, 2010 WL 3702427, at *3 (N.D. Cal. Sept. 15, 2010). Therefore, the undersigned concludes that the arbitral tribunal established by the Bilateral Investment Treaty is an international tribunal under § 1782(a).

Accordingly, all three statutory factors are met as to both the Lago Agrio Litigation and the Treaty Arbitration. Next, the Court must consider the discretionary factors set forth in the Supreme Court's decision in *Intel*.

## THE *INTEL* DISCRETIONARY FACTORS

### 1. Whether the person from whom discovery is sought is a participant in the foreign proceeding such that the discovery sought is within the foreign tribunal's jurisdictional reach.

When the target of discovery is a participant in the foreign legal proceeding "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Intel,* 542 U.S. at 264. Here, Mr. Barnthouse is not a party to either the Lago Agrio Litigation nor the Treaty Arbitration. Therefore, this factor counsels in favor of granting the discovery sought by Chevron.

**2.  The nature of the foreign tribunal, the character of the foreign proceedings, and the receptivity of the foreign tribunal abroad to U.S. federal-court assistance.**

Chevron asserts that the Lago Agrio court is receptive to its § 1782 evidence as this evidence has been accepted into the record of the court, which advised that such evidence would "be taken into account at the appropriate point in the proceeding." (Doc. 3, Exh. P at 2). Chevron also contends that at least one district court in the United States has determined that the evidence Chevron seeks through the § 1782 proceedings goes to the heart of the dispute in the Arbitration Treaty proceeding. (Doc. 1 at 15, citing Doc. 4, Exh. D at 45, 47).

The Plaintiffs, on the other hand, contend that neither the Ecuadorian court in the Lago Agrio Litigation nor the Arbitration Treaty tribunal are receptive to the discovery Chevron now seeks from Mr. Barnthouse.  The Plaintiffs assert that during a proceeding before the international arbitration tribunal, Chevron admitted that the Lago Agrio court was not interested in its evidence of the Plaintiffs' alleged fraud. (Doc. 1, Exh. G at ¶¶241-245).  The Plaintiffs also contend that the fact that the Lago Agrio court continues to accept Chevron's § 1782 submissions for filing is not because the court is receptive to Chevron's evidence, but rather because the Ecuadorian court is bound to formally accept filings into the record under the Ecuadorian Constitution. (Doc. 20 at 19).

With respect to the Arbitration Treaty proceeding, the Plaintiffs argue that Chevron has failed to affirmatively demonstrate that the international arbitration tribunal would authorize the discovery Chevron now seeks. (Doc. 20 at 27-28).  The Plaintiffs also contend that the very nature of international arbitration severely limits the taking of depositions and the document discovery sought by Chevron because it is the antithesis of the speedy, economical remedy

arbitration is designed to provide. (Doc. 20 at 29-30).

The question on this *Intel* factor is not whether the Lago Agrio court or international arbitration tribunal would "authorize" or permit the type of discovery Chevron seeks from Mr. Barnthouse, but rather whether those foreign tribunals would be "receptive" to assistance from the United States federal court. *Intel*, 542 U.S. at 264. Contrary to the Plaintiffs' contention, the burden of proof rests with the Plaintiffs to present "authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782." *Euromepa S.A. v. R. Esmerian, Inc.,* 51 F.3d 1095, 1100 (2d Cir. 1995). *See also Ecuadorian Plaintiffs v. Chevron Corp.,* 619 F.3d 373, 377 (5th Cir. 2010) ("there has been no 'clear directive' from the Ecuadorian court that it 'would reject evidence' produced in the United States") (quoting *Euromepa S.A.,* 51 F.3d at 1100). In addressing the precise argument raised by the Plaintiffs in this case, the Court in *In re Veiga,* __ F. Supp.2d __, 2010 WL 4225564, at *9 (D.D.C. Oct. 20, 2010), determined:

> There is no indication, let alone authoritative proof, that the Ecuadorian courts or the BIT Arbitration Panel would reject any of the documents or information gathered pursuant to the Applications. Indeed, the record supports only the opposite conclusion, and other courts have found both the Ecuadorian judiciary and arbitral bodies operating under UNCITRAL rules to be generally receptive to federal court assistance under § 1782(a). *See, e.g., In re Application of Noboa*, [No. M19-111,] 1995 WL 581713, at *1-2 (S.D.N.Y. Oct. 4, 1995) (Ecuadorian courts)*; In re Petition of Compania Chilena de Navegacion*, [No. 03-cv-5382,] 2004 WL 1084243, at *4-5 (E.D.N.Y. Feb.6, 2004) (same); [*In re*] *Oxus Gold* [*PLC*], [Misc. No. 06-82,] 2007 WL 1037387, at *5 [(D.N.J. April 2, 2007)] (UNCITRAL-governed arbitration); *OJSC Ukrnafta* [*v. Carpatsky Petroleum Corp.*, No. 3:09 MC 265], 2009 WL 2877156, at *4 [(D. Conn. Aug. 27, 2009)] (same).

*Id. Cf. In re Application of OOO Promnefstroy for an Order to Conduct Discovery for Use in a Foreign Proceeding,* Misc. No. M 19-99, 2009 WL 3335608, at *7 (S.D.N.Y. Oct. 15, 2009) (authoritative proof that foreign tribunal would reject evidence found "where the foreign tribunal

or government has written to the district court hearing the application and expressly stated that it did not want the American court's help" and where foreign minister or prosecutor "explicitly asked the district court judge to deny the discovery request") (citations omitted).[4]  Therefore, this factor weighs in favor of granting Chevron's application for discovery.

The Plaintiffs also contend that the discovery Chevron seeks from Mr. Barnthouse has "little relevance" to the issues underlying the Treaty Arbitration. (Doc. 20 at 29-31).  Yet, whether the Republic of Ecuador has improperly colluded with the Plaintiffs in the Lago Agrio litigation on the issue of the damages assessment–an assessment which includes Mr. Barnthouse's report that was submitted by the Plaintiffs–appears directly relevant to the issues pending in the Treaty Arbitration.  In any event, it is not for this Court to assess whether the Treaty Arbitration tribunal will find the report relevant and admissible in that proceeding.  If not, the international tribunal is certainly free to disregard the information obtained from Mr. Barnthouse.  In the absence of any authoritative evidence demonstrating that the Lago Agrio court and the Treaty Arbitration tribunal would reject the information sought by Chevron, the Court finds the "receptivity" element of *Intel* is met in this case.

The Plaintiffs further contend that Chevron's request for discovery from Mr. Barnthouse is premature because the international arbitration tribunal has not yet determined whether it has jurisdiction to hear Chevron's claims against the Republic of Ecuador. (Doc. 20 at 32-33).  The Supreme Court in *Intel* rejected the notion that the proceeding before a foreign tribunal must be

---

[4] *In re: Microsoft Corp.*, 428 F. Supp.2d 188 (S.D.N.Y. 2006), cited by the Plaintiffs in support of their argument on lack of receptivity (Doc. 20 at 20), actually supports Chevron in the instant case.  In *Microsoft,* a § 1782 proceeding seeking discovery for purposes of an antitrust proceeding before the European Commission, "the Commission . . . explicitly stated that it opposes the discovery sought by Microsoft and is not receptive to U.S. judicial assistance." *Id.* at 194.  There has been no such explicit rejection of the evidence sought here by the Lago Agrio court nor the Treaty Arbitration tribunal.

"pending" or even "imminent" before discovery may be permitted under § 1782(a). Rather, the proceeding need only be "within reasonable contemplation" to fall within the scope of § 1782(a). *Intel*, 542 U.S. at 259 (noting that it is not necessary for the adjudicative proceeding to be actually pending at the time evidence is sought, "but only that the evidence is eventually to be used in such a proceeding.") (citation omitted). Thus, whether the Arbitration Treaty tribunal has determined the jurisdictional issue does not preclude the relief sought by Chevron in this matter. *See In re: Veiga*, ___ F. Supp.2d ___, 2010 WL 4225564, at *9 (D.D.C. Oct. 20, 2010) (rejecting the precise argument made in the instant case, stating that "[t]he notion that it would somehow be premature for this Court to allow the requested discovery until the BIT Arbitration Panel has determined it has jurisdiction to hear the matter runs contrary to clear and unequivocal case law. . . .") (citing *Intel*, 542 U.S. at 259).

### 3. Whether Chevron's application is an attempt to circumvent the proof-gathering restrictions of Ecuador.

The Plaintiffs contend that Chevron's § 1782 request is in actuality an attempt to circumvent the foreign proof-gathering restrictions of the Ecuadorian legal system. The Plaintiffs point to the differences between the approaches to and acceptance of discovery in the Ecuadorian courts and the United States, including the restrictions on the taking of expert discovery. (Doc. 20 at 15-18). The Plaintiffs argue that, as a matter of comity, Chevron should not be permitted to obtain in the district court what it clearly could not obtain in the foreign court or arbitration tribunal. (Doc. 20 at 18)

Yet, as Chevron correctly argues, the Supreme Court in *Intel* rejected the notion that § 1782 discovery is limited to only those materials that are discoverable in the foreign jurisdiction.

The *Intel* Court noted that neither the text nor legislative history of § 1782 categorically bars "a district court from ordering production of documents when the foreign tribunal or the 'interested person' would not be able to obtain the documents if they were located in the foreign jurisdiction." 542 U.S. at 259.[5]

Instead, the Plaintiffs must demonstrate that Chevron is pursuing the Barnthouse discovery in bad faith.  *See Minatec Finance S.A.R.L. v. SI Group Inc.*, No. 1:08-cv-269, 2008 WL 3884374, at *8 (N.D.N.Y. Aug. 18, 2008).  *See also In re Veiga*, 2010 WL 4225564, at *10. The Plaintiffs have not cited, nor has the Court found, anything in the record to support the claim that Chevron is seeking discovery from Mr. Barnthouse in bad faith.  The Plaintiffs recently submitted the Barnthouse Report to the Lago Agrio court on September 16, 2010 in support of their damages assessment.  Chevron's request for discovery from Mr. Barnthouse appears to be a good faith effort to elicit evidence that has probative value in both the Lago Agrio and Treaty Arbitration proceedings.  There is no evidence that Chevron is attempting an end-run around Ecuadorian law to obtain the Barnthouse discovery it now seeks.

---

[5]The Supreme Court recognized that most civil-law systems do not have pretrial discovery procedures similar to those contained in the Federal Rules of Civil Procedure.  But this fact does not mean that foreign governments would take offense to assistance from United States district courts:

> A foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions-reasons that do not necessarily signal objection to aid from United States federal courts.  *See Bayer*, 146 F.3d at 194 ("[T]here is no reason to assume that because a country has not adopted a particular discovery procedure, it would take offense at its use."). . . . When the foreign tribunal would readily accept relevant information discovered in the United States, application of a foreign-discoverability rule would be senseless.  The rule in that situation would serve only to thwart § 1782(a)'s objective to assist foreign tribunals in obtaining relevant information that the tribunals may find useful but, for reasons having no bearing on international comity, they cannot obtain under their own laws.

*Intel*, 542 U.S. at 261-62.

**4. Whether Chevron's application for discovery is intrusive and burdensome.**

The final *Intel* factor requires the Court to examine whether the discovery sought by Chevron is unduly intrusive or burdensome. *Intel,* 542 U.S. at 265.

The Plaintiffs argue that Chevron has already presented volumes of information to the Lago Agrio court in support of its claim that the Cabrera Report assessing damages is fraudulent. The Plaintiffs assert that throughout Mr. Cabrera's investigation, Chevron attempted to thwart and delay the investigation at Cabrera's on-site inspections and in the Lago Agrio court by filing multiple motions attacking Cabrera's qualifications, credibility, processes, and findings.  The Plaintiffs note that in 2009, Chevron began instituting § 1782 proceedings in the United States seeking discovery aimed at undermining the authorship and credibility of the Cabrera Report. The Plaintiffs assert that the fraud issue is squarely before the Lago Agrio court and Chevron's latest attempts at deposing the September 16, 2010 experts is unnecessarily duplicative and burdensome. (Doc. 20 at 21-23).

The irony, of course, is that the Plaintiffs' submission of the six September 16, 2010 expert reports in support of their damages assessment was the catalyst for this next wave of discovery that Chevron now seeks.  Admittedly, Mr. Barnthouse is explicit about his heavy reliance on the Cabrera Report in his assessment of the damage issues in the Lago Agrio Litigation. (Doc. 7, Exh. W).  But to the extent Chevron seeks to uncover information showing the extent to which Barnthouse's expert opinion is in fact his own, or is influenced by Cabrera or others, as well as the underlying basis for his expert opinion, such discovery is not duplicative of the pre-September 16, 2010 Section 1782 evidence produced.  The undersigned would not go as far as Chevron in saying that the September 16, 2010 expert reports are an attempt to "launder"

13

the Cabrera Report.  That is an issue for the Lago Agrio court.  But given the long and

contentious history of the Lago Agrio Litigation to date, it would be neither burdensome nor

intrusive to permit discovery from Mr. Barnthouse, and fairness dictates the disclosure sought in

this case.  Thus, all four *Intel* factors support granting Chevron's application for discovery in this

case.

## THE PARTIES' REMAINING ARGUMENTS

**1.  Whether Fed. R. Civ. P. 30(a)(2)(A)(i) prohibits Chevron from taking Mr. Barnthouse's deposition.**

The taking of discovery under § 1782 is generally governed by the Federal Rules of Civil

Procedure.  *See* § 1782(a) ("To the extent that the order does not prescribe otherwise, the

testimony or statement shall be taken, and the document or other thing produced, in accordance

with the Federal Rules of Civil Procedure.").  Rule 30 limits the number of depositions that a

party may take in any one proceeding without leave of court:  "A party must obtain leave of

court, and the court must grant leave to the extent consistent with Rule 26(b)(2): (A) if the parties

have not stipulated to the deposition and: (i) the deposition would result in more than 10

depositions being taken under this rule or Rule 31 by the plaintiffs, or by the defendants, or by

the third-party defendants. . . ." Fed. R. Civ. P. 30(a)(2)(A)(i).  The Plaintiffs argue that Chevron

has taken eleven depositions in aid of the Lago Agrio Litigation and Treaty Arbitration and that

Rule 30 prohibits Chevron from conducting Mr. Barnthouse's deposition in this matter without

leave of court. (Doc. 20 at 35-36).

Chevron argues that Rule 30 does not limit the number of expert depositions because

expert depositions are governed by Rule 26(b)(4)(A), not Rule 30.  Rule 26(b)(4)(A)  provides in

pertinent part: "A party may depose any person who has been identified as an expert whose opinions may be presented at trial . . . ."

There is an open question as to whether the Rule 30 limit of ten depositions applies to expert depositions. *See Presidio Components, Inc. v. American Technical Ceramics Corp.,* No. 08cv335, 2009 WL 861733, at *2 n.4 (S.D. Cal. March 25, 2009) ("The ten deposition limit in Rule 30(a)(2)(A)(i), however, is directed to depositions taken under Rule 30 and 31; not depositions of experts taken under Rule 26(b)(4).  Expert depositions *may or may not* be subsumed in Rule 30(a)(1)'s broad reference to 'any person.'") (emphasis added); *Express One Intern., Inc. v. Sochata*, No. 3-97 cv 3121, 2001 WL 363073, at *2 -3 (N.D. Tex. March 2, 2001) ("It is not at all clear whether expert depositions under Rule 26(b)(4) are governed by Rule 30(a)(2)(A), which specifically pertains to depositions under Rules 30 and 31. Expert depositions are governed by Rule 26(b)(4), but could also be included in Rule 30's broad application to 'any person.' Fed. R. Civ. P. 30(a)(1).  Neither the cases, nor the commentary shed any light on this issue.  *See, e.g.*, Advisory Committee Note, 146 F.R.D. at 662.").

None of the cases cited by either of the parties addresses the precise issue of whether Fed. R. Civ. P. 30(a) limits the number of depositions in the context of a request for discovery under Section 1782(a).  While Congress intended § 1782 proceedings to facilitate international cooperation in litigation, this does not entitle litigants in foreign proceedings to unbridled and unlimited discovery.  *See Bayer AG v. Betachem, Inc.,* 173 F.3d 188, 191 (3rd Cir. 1999).  The parties have not submitted and the Court has not found any authority for the proposition that multiple § 1782 proceedings in different jurisdictions should be treated as a single case, or conversely, that all the § 1782 proceedings brought by Chevron in the United States should be

15

treated as separate proceedings.

Given this Court's discretion, and in view of the scope and limits of discovery prescribed by Rule 26(b), the Court will not deny Chevron's application on the basis of Rule 30. The Plaintiffs have made Mr. Barnthouse's expert opinion an issue by submitting it in support of their assessment of damages in the Lago Agrio Litigation. As aptly put by another district court in a § 1782 proceeding involving Chevron and the Plaintiffs:

> In an adversarial proceeding, a process designed to reach the truth of the matter through the presentation of opposing perspectives, justice does not permit one side to inform and facilitate a damages assessment, purposed for the reliance of the court, without permitting its opponent access to the materials and process underlying the assessment.

*Chevron Corp. v. Stratus Consulting, Inc.,* No. 10-cv-47, 2010 WL 3923092, at *10 -11 (D. Colo. Oct. 1, 2010). The Plaintiffs have not offered any evidence that the requested deposition would be unreasonably cumulative or duplicative, or that the information from Mr. Barnthouse could be obtained from a more convenient and less burdensome source. Therefore, the Court determines that Rule 30 does not prohibit the discovery sought by Chevron in this case.

**2. Whether the Court should apply the newly amended version of Fed. R. Civ. P. 26 to limit the disclosure of draft expert materials and attorney-expert information.**

On December 1, 2010, Fed. R. Civ. P. 26 will be amended to protect draft expert materials and most attorney-expert communications from discovery. *See* Fed. R. Civ. P. 26(b)(4)(B)-(C). The Supreme Court Order adopting this amendment provides that Courts are to apply amended Rule 26 to all proceedings pending on December 1, 2010, "insofar as just and practicable." *See* Order (U.S. Apr. 28, 2010) (transmitting to Congress proposed 2010 rule amendments, which shall "take effect on December 1, 2010, and shall govern in all proceedings

16

thereafter commenced and, insofar as just and practicable, all proceedings then pending").

The current version of Rule 26(b)(4), governing discovery from experts, provides:

**(4) Trial Preparation: Experts.**

(A) *Expert Who May Testify*. A party may depose any person who has been identified as an expert whose opinions may be presented at trial.  If Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided.

The 2010 amended version of Rule 26(b)(4) provides:

**(4) Trial Preparation: Experts.**

(A) *Deposition of an Expert Who May Testify*. A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided.

**(B)** *Trial-Preparation Protection for Draft Reports or Disclosures*. Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded.

**(C)** *Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses*. Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:

> **(i)** relate to compensation for the expert's study or testimony;

> **(ii)** identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or

> **(iii)** identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

The Advisory Committee Notes to the Proposed 2010 Amendments to Rule 26 provide, in

relevant part:

17

**Rule 26.** Rules 26(a)(2) and (b)(4) are amended to address concerns about expert discovery.  The amendments to Rule 26(a)(2) require disclosure regarding expected expert testimony of those expert witnesses not required to provide expert reports and limit the expert report to facts or data (rather than "data or other information," as in the current rule) considered by the witness. Rule 26(b)(4) is amended to provide work-product protection against discovery regarding draft expert disclosures or reports and--with three specific exceptions--communications between expert witnesses and counsel.

In 1993, Rule 26(b)(4)(A) was revised to authorize expert depositions and Rule 26(a)(2) was added to provide disclosure, including--for many experts--an extensive report. Many courts read the disclosure provision to authorize discovery of all communications between counsel and expert witnesses and all draft reports. The Committee has been told repeatedly that routine discovery into attorney-expert communications and draft reports has had undesirable effects. Costs have risen. Attorneys may employ two sets of experts--one for purposes of consultation and another to testify at trial--because disclosure of their collaborative interactions with expert consultants would reveal their most sensitive and confidential case analyses. At the same time, attorneys often feel compelled to adopt a guarded attitude toward their interaction with testifying experts that impedes effective communication, and experts adopt strategies that protect against discovery but also interfere with their work.

**Subdivision (a)(2)(B).** Rule 26(a)(2)(B)(ii) is amended to provide that disclosure include all "facts or data considered by the witness in forming" the opinions to be offered, rather than the "data or other information" disclosure prescribed in 1993. This amendment is intended to alter the outcome in cases that have relied on the 1993 formulation in requiring disclosure of all attorney-expert communications and draft reports. The amendments to Rule 26(b)(4) make this change explicit by providing work-product protection against discovery regarding draft reports and disclosures or attorney-expert communications.

The refocus of disclosure on "facts or data" is meant to limit disclosure to material of a factual nature by excluding theories or mental impressions of counsel.  At the same time, *the intention is that "facts or data" be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients.  The disclosure obligation extends to any facts or data "considered" by the expert in forming the opinions to be expressed, not only those relied upon by the expert*.

Advisory Committee Notes to Fed. R. Civ. P. 26 (emphasis added).

It is both just and practicable to apply the amended rule in this case.  Chevron filed its

application for discovery on October 22, 2010, shortly before the amended version of Rule 26(b)(4) was to take effect.  Discovery in this action has not yet commenced and the parties, by stipulation, have agreed that if so ordered the Plaintiffs will produce documents on December 1, 2010, the effective date of the amended rule.  Therefore, applying amended Rule 26 in this matter will not mean changing the applicable rules mid-course.  In addition, Chevron will have ample opportunity to discover and test the facts underlying Mr. Barnthouse's expert opinion.  Also, this Court's Order provides the parties with ample notice of the provisions that will govern the discovery proceedings so that they can prepare for those proceedings accordingly.  For these reasons, the Court will apply amended Rule 26 in the present matter.

**3.  Whether the crime/fraud exception to the attorney-client/work product privilege applies to the discovery sought by Chevron.**

Chevron argues that any privilege the Plaintiffs could claim over Mr. Barnthouse's work would not survive the crime-fraud exception to the attorney-client/work product privilege and therefore the discovery sought from Mr. Barnthouse, including his draft reports, is not protected.  Chevron asserts that Mr. Barnthouse's report is part of the Plaintiffs' scheme to obtain a multi-billion dollar award through the use of fraud as several other district courts have already determined.  *See In re Chevron Corp.,* No. 10 MC 0002, 2010 WL 4449197, at *4 (S.D.N.Y. Nov. 5, 2010) ("There is evidence obtained in other Section 1782 actions brought by Chevron that [the Plaintiffs' New York attorney Steven] Donziger and others associated with him have presented false evidence and engaged in other misconduct in Ecuador.  Indeed, the overall record has resulted in findings by three other district courts, in Chevron's Section 1782 proceedings against other respondents involved in the plaintiffs' efforts in the Lago Agrio case, that any

19

claims of attorney-client privilege were overcome by the crime-fraud exception .")[6]

The crime-fraud exception to the attorney-client privilege holds that communications made between an attorney and his client for the purpose of planning or facilitating a crime or fraud are not protected by the attorney client-privilege.  *See United States v. Zolin*, 491 U.S. 562-63 (1989).  The purpose of the exception is to assure "that the seal of secrecy" between a lawyer and his client does not extend to communications "'made for the purpose of getting advice for the commission of a fraud' or crime."  *Id*. at 563.  The crime-fraud exception applies as well to the work-product privilege.  *See In re Grand Jury Subpoenas*, 454 F.3d 511, 520 (6th Cir. 2006) (both the attorney-client privilege and the work product "may be overridden . . . by the so-called crime-fraud exception, encompassing advice given with respect to ongoing or future wrongdoing.").

The Sixth Circuit has set forth a two-part test for applying the crime-fraud exception: First, the movant must make a prima facie showing that "a sufficiently serious crime or fraud occurred to defeat the privilege;" second, the movant "must establish some relationship between the communication at issue and the prima facie violation."  *U.S. v. Collis*, 128 F.3d 313, 321 (6th Cir. 1997) (quoting *In re Antitrust Grand Jury*, 805 F.2d 155, 164 (6th Cir. 1986)).  For the movant to satisfy the prima facie showing, the evidence presented must be sufficient to provide a

---

[6]Citing *In re Chevron Corp.,* No. 10-MC-21 (J/LFG) [DI 11] (D.N.M. Sept. 13, 2010) (finding "that ... discussions trigger the crime-fraud exception, because they relate to corruption of the judicial process, the preparation of fraudulent reports, the fabrication of evidence, and the preparation of the purported expert reports by the attorneys and their consultants."); *In re Application of Chevron Corp.*, No. 10-cv-1146-IEG (WMc) [DI 9] (S.D .Cal. Sept. 10, 2010) (crime-fraud exception applies because "[t]here is ample evidence in the record that the Ecuadorian Plaintiffs secretly provided information to Mr. Cabrera, who was supposedly a neutral court-appointed expert, and colluded with Mr. Cabrera to make it look like the opinions were his own."); *Chevron Corp. v. Champ*, No. 1:10-mc-0027 (GCM-DLH) [DI 12] (W.D.N.C. Aug. 30, 2010) ("While this court is unfamiliar with the practices of the Ecuadorian judicial system, the court must believe that the concept of fraud is universal, and that what has blatantly occurred in this matter would in fact be considered fraud by any court.  If such conduct does not amount to fraud in a particular country, then that country has larger problems than an oil spill.").

20

prudent person with "a reasonable basis to suspect the perpetration of a crime or fraud." *Id.* (quoting *In re Antitrust Grand Jury*, 805 F.2d at 166).  The burden is on Chevron, as the moving party, to show "a factual basis" sufficient to support application of the crime-fraud exception. *In re Grand Jury Subpoenas*, 454 F.3d at 520 (citing *Zolin*, 491 U.S. at 572).

Here, Chevron has failed to demonstrate a sufficient factual basis for application of the crime-fraud exception to the Barnthouse discovery sought in this case.  While Chevron has presented evidence showing serious questions going to the authorship of the Cabrera Report, which was authored two years before the Barnthouse Report, there is no factual basis for Chevron's assertion that Mr. Barnthouse was involved in any alleged ongoing fraud in this case. In fact, Mr. Barnthouse was explicit in his attribution of much of his report to the Cabrera Report in his assessment of damages in the Lago Agrio Litigation.  Barnthouse's Report specifically notes that his "evaluation relies heavily on Cabrera (2008) but notes significant limitations and uncertainties related to this study." (Doc. 7, Exh. W at 2).  Chevron has presented no evidence or facts from which the Court could reasonably conclude that Mr. Barnthouse had any knowledge of the allegedly fraudulent nature of the Cabrera Report, or that he participated in any ongoing fraud by relying on the Cabrera Report knowing it to be fraudulent or on any other documents or information that would call into question the authorship of his own report.  Chevron has not presented any evidence postdating the evidence already submitted in connection with the question of the authorship of the Cabrera Report that would show Mr. Barnthouse authored or submitted his report in furtherance of ongoing fraud or crime.  Therefore, the crime-fraud exception does not apply in this case.

**CONCLUSION**

The Court concludes that Chevron has satisfied both the statutory factors under § 1782(a) and the *Intel* discretionary factors. Therefore, Chevron's application for an order pursuant to 28 U.S.C. § 1782 to conduct discovery on Lawrence W. Barnthouse for use in foreign proceedings (Doc. 1) is **GRANTED**.

However, in light of the Court's decision that amended Rule 26 shall apply to the discovery in this case, Chevron is **ORDERED** to modify the existing proposed subpoena to Mr. Barnthouse to comply with the Court's Order and the scope of amended Rule 26 and to serve such modified subpoena on Respondent Barnthouse. Chevron shall also serve a copy of the modified subpoena on counsel for the Ecuadorian Plaintiffs.

In keeping with the parties' agreed expedited discovery schedule to produce documents by December 1, 2010 (Doc. 13), any dispute over the scope of the modified subpoena shall be brought to the attention of the Court, by a telephone call to chambers, on or before 12 noon on November 30, 2010. The parties may not file any further discovery motions without (1) attempting to informally resolve any disputed items of discovery and, if their attempts are unsuccessful, (2) contacting the Court's courtroom deputy to schedule an informal conference with the Court.

**IT IS SO ORDERED.**


Date: 11/26/2010                                     s/Karen L. Litkovitz
                                                     Karen L. Litkovitz, Magistrate Judge
                                                     United States District Court

22